Please be seated. Madam Clerk, please call the case. Please proceed. Good morning, Your Honors. Counsel. My name is Brian Kohut. I'm an assistant appellate defender at the Office of the State Appellate Defender, and I represent Ms. Stephanie McKee, defendant in this criminal matter. Following a bench trial before Judge Gerald Kinney in Will County, Bethany was found guilty of two counts of first degree murder based on a theory of accountability. Because there were two deaths, she was sentenced to a mandatory term of natural life. On appeal, Bethany raises one issue, whether her sentence was unconstitutional as applied to her, or she did not intend to kill or actually kill when she was barely 18 years old and she had no prior criminal history. When sentencing Bethany to natural life, Judge Kinney said, if given the discretion, I would impose a sentence that is significant, but that would not be the maximum sentence. Bethany is asking this court to allow for such discretion. As a threshold matter, Your Honors, the proportionate penalties clause of the Illinois Constitution provides greater protection than the Eighth Amendment. The Illinois Supreme Court in People v. Clemens held just that, that the proportionate penalties clause allows for greater protections, and the two are not interpreted synonymously. The state argues that Clemens is no longer good law in light of Patterson, which was issued two years later, but Patterson did not deal with the sentencing issue. It's a procedural matter under the exclusive jurisdiction statute of the juvenile code. Patterson did not overrule, abrogate, or otherwise distinguish Clemens at all. And then two years after Patterson, the Illinois Supreme Court decided in People v. Rizzo where it again stated that the proportionate penalty clause provides greater protection. I'll turn to the facts of this case. The evidence tended to show that Bethany invited two men over to this residence and the plan was to rob them of whatever drugs or money they had in their pocket. There's no indication that she intended that there was any talk of intent to kill at that time. When the two came over, they went upstairs and Adam Landerman and Joshua Minor, without the girls in the room, strangled and killed the two men. Again, Bethany did not actually kill or intend to kill anyone. She was personally responsible, culpable for the offensive robbery for bringing the two over under a common design theory of accountability. But her participation did not warrant a life sentence in this case. The evidence also shows that Bethany can be restored to useful citizenship. She was barely 18 years old at the time of this offense. She had no prior criminal history. This devised robbery for cigarette money shows her lack of maturity, her impulsivity, and unnecessary risk taking. This plan was devised because they didn't have any cigarettes. So they brought these guys over and their intent was to rob them for cigarette money so they could go out and buy cigarettes. This is immaturity. I think that was part of it as well. They were looking to party. They didn't have any money left to party so they invited two guys over to take the money so they could go party a little bit more. It just shows her maturity and the maturity of the group as a whole. Her personal background also weighed against the mandatory life sentence. Bethany suffered from serious mental health issues beginning when she was 11 years old. At the age of 14 she was raped and a couple months later she was kidnapped. She was held at gunpoint, drugged, and forcibly prostituted for a matter of time. She also had substance and alcohol abuse issues. What is most telling about her rehabilitative potential, the potential to restore her to useful citizenship, is that while she was in Will County Adult Detention Facility, even though she was facing a mandatory natural life sentence, she was still going through alcoholics anonymous and substance abuse classes to better herself while she was in jail. What do you think that means when she called? Didn't she call her father to try to help? That's when he called the cops to dispose of the bodies? That's right. That was the extent to any potential concealment in this case. She called up her dad essentially saying it shows her immaturity, your honor. She's in a bind. She calls on daddy to help her out, come over and see what he can do to help her out of this mess. As well, there was no actual concealment prior to her phone call, even though they had tools at the house. For 17 hours after the offense occurred, nobody did anything. When the police arrived, Adam Landman was in the basement drinking tequila, Jocelyn Miners upstairs smoking a cigarette listening to music. So there really was no plan whatsoever. Her plan essentially was to get daddy over and try to get dad to help her out. Who kicked the bodies? That was the other three participants. There was evidence that was presented at the bench trial that Bethany kicked the body one time at the behest of Joshua Miner. The idea was so long as all of them participated in this, everybody's in on it if they each kicked the body. So at the behest of Miner, she kicked the body apparently one time. And there was no DNA or no blood or anything found on her pants or on her shoes showing that she didn't really get into kicking the bodies. But there's evidence showing that these other three, they kicked the bodies, they hit them with bottles, they rode on them like surfboards. It was just a terrible, terrible situation here. But Bethany McKee was not involved in that. She was in the other room smoking her cocaine. And even though Bethany had this terrible life history, she had no prior criminal history. And this is in stark contrast to Joshua Miner who was an adult, 26 years old, had a number of prior felony convictions. And it's really apparent that he's the ringleader in this whole thing. Nevertheless, Bethany is required to serve the same sentence that Joshua Miner is. I'm looking at the series of the offense coupled with the objective of restoring this offender to useful citizenship. Bethany should not spend the rest of her life in prison. She's only asking for the same thing that the trial judge was asking for, and that's discretion in sentencing her. Now, there are a number of cases on point. The first to start out with is in 2002 in Leon Miller in the Illinois Supreme Court case. There was a 15-year-old. A couple of his friends showed up. They had guns. And they said, hey, act as lookout for us. They murdered two individuals. Leon Miller was subject to a mandatory natural life sentence based on the homicides of two individuals. The Illinois Supreme Court held that that mandatory natural life sentence was disproportionate in that case as applied. He was 15. He was 15. That's correct. But the Illinois Supreme Court repeatedly and continuously stated that it's not only the juvenile status, not only the fact that he's only 15 years old, that he's a minor, but also the fact that he was merely convicted on the basis of accountability. So it's the two moving along in tandem that led the court to find that this was unconstitutional as applied to Leon Miller. And the state argues that it just applies to juvenile sentences, but that has not – first districts recently issued two decisions in House and Harris where they've applied Miller to adult sentences. And House was a 19-year-old offender who was convicted on a theory of accountability. He was part of a gang. They saw that somebody else was selling drugs on their corner. So they all showed up. Everybody had guns, including House in that case. They kidnapped the two people that they wanted to quote-unquote talk to, took them down to the railroad tracks. House acted as a lookout while these other two were murdered. And the appellate court remanded that matter for resentencing, allowing complete discretion on the trial court to impose a sentence in that case because he was a young offender and he was convicted on a theory of accountability. And Harris, it's even more – Harris was even more culpable for his actions. He shot one person. He was convicted of murder and attempted murder, and he was the trigger puller on both sides. He was 18 years old and faced a de facto life sentence. And the Illinois Appellate Court reversed and remanded the matter for resentencing, again allowing for complete discretion in that case because the offender was young and he showed a potential for – because he was young, essentially. So there is support for applying Miller to not only juvenile sentences but adult sentences. And in the end, Your Honors, the Constitution contemplates that it is this court's judgment that will be brought to bear on the question. In that endeavor, this court should review the gravity of the defendant's offense in connection with the severity of the statutorily mandated sentence within our community's evolving standards of decency. Now, in the past 15 years, we've seen the evolution of these standards of decency in our community, beginning in the United States Supreme Court in the juvenile cases, Leon Miller in the Illinois Supreme Court, and then House and Harris in the First District. So this court – Bethany respectfully requests that this court find that her sentence violates the proportionate penalties clause as applied to her where she did not participate in the actual murders. She was only 18 years old at the time of the offenses and she had no prior criminal history. Accordingly, she respectfully requests that this court remand the matter for resentencing  Thank you, Your Honors. Thank you, Counsel. Counsel, you may proceed. Good morning. May it please the Court? Counsel. The defendant raises only one issue in appealing the search safety and mandatory life sentences and unconstitutional as applied to her. The defendant was convicted on the basis of accountability for the double murders of Terrence Rankins and Derek Clover that her two male accomplices actually committed. The defendant was present for the planning of the crime. She lured the victims to the crime scene, which was the home of the fourth conspirator. She attempted to arrange for the disposal of the bodies. She split the proceeds from the robbery and the four accomplices bought drugs with the money. And the defendant could have withdrawn, but she did not do so at any time. The applicable sentencing statute is 730 ILCS 5-5-8-1A1CII. In our motion to add authority, the people noted that the newest version of this statute was effective January 1, 2017 and states in relevant part that the court shall sentence the defendant to a term of natural life imprisonment if the defendant at the time of the commission of the murder had attained the age of 18 and is found guilty of murdering more than one victim. Before January 1, 2016, the section had no minimum age limit on mandatory life sentences for multiple murders. The defendant was 18 at the time of the murder, so the prohibition against mandatory life sentences for juveniles does not apply to her. In her brief, the defendant does not contest her murder convictions. The defendant acknowledges that Section 5-8-1 mandated that she be sentenced to life imprisonment. In our brief, people cited case law stating that the mandatory life sentence for multiple murders specified under the section is not limited to defendants who have been convicted as principal offenders, but this section is also validly applied where guilt is based on accountability. And this section has been upheld against state and federal constitutional challenges, even where the defendant's convictions were based on accountability. In our Supreme Court, Fernandez interpreted the accountability statute to mean that a defendant is accountable for the conduct of the person that she aids and that the word conduct covers any criminal act done in furtherance of the planned and intended act. A defendant asserts that the Illinois Supreme Court's holding of people will be militarized to adult offenders. In Miller, the trial judge held that Section 5-8-1 was unconstitutional. It was applied to a 15-year-old, and the judge sentenced the minor to 50 years. The Miller court reviewed as a matter of first impression the constitutionality of applying the mandatory life sentence to a juvenile convicted on a theory of accountability. Miller held in that case that the life sentence given to the minor who acted as a lookout after only one minute's time to consider his participation and who did not actually touch the murder weapon was particularly harsh and unconstitutionally disproportionate in that it shocked the moral sense of the community under the proportionate penalties clause. The First District of Winters held that Miller does not apply to a defendant who was 18 at the time of the murders. A defendant relied on House, talked about it here this morning, in support of her claim that her sentence violated the proportionate penalty clause, and House, of course, involved a young offender, also a 19-year-old, who did not participate in the planning of the crime as our defendant did, and he acted as a lookout while the crime was conducted at an interview. Of course, these murders took place out of the view of our defendant, but then she went further and took the proceeds of the crime, and she also tried to hide the bodies, and at no time when she had the opportunity to leave this whole situation and go to the police, she didn't. She came back at a crime scene and continued in the whole procedure. In a reply brief in here this morning, defendants defined a Supreme Court case of Clemens for the premise that the proportionate penalty clause provides greater relief than the Eighth Amendment, and the defendant argued in her brief for the first time that if Miller only applied to minors, then the proportionate penalties clause would provide only the same protection as the Eighth Amendment, not the additional protections under Clemens, and Clemens is a 2012 case and our Supreme Court in Patterson wasn't reviewing specifically a sentencing issue, did reiterate that the Illinois proportionate penalties clause is coextensive with the Eighth Amendment's cruel and unusual punishment clause. The people submit that under either of these standards, under Clemens or under Patterson, the defendant's sentence was proper. The defendant mentioned the case of Harris, which was cited in a motion that had authority in the Harris case. He actually shot one of the victims to death in an attempted murder of other individuals, and he was sentenced to mandatory, because of the mandatory firearms enhancements, he got a total of 76 years, which was, according to the court, a de facto life sentence, and they used the Illinois Supreme Court case of Thompson regarding the evolving science on juvenile maturity and brain science, but a recent case following Harris, also from the First District, I contacted counsel about this yesterday, so it was not a surprise to him, but now we'll be filing a motion to add authority in this, but there's the People v. Thomas, it's 2017, 1st, 14, 2557. That court said, we respectfully disagree with Harris. As will be shown, the majority opinion in Harris wrongly claims Thompson has authority to argue extending the juvenile sentencing reasoning in Miller to include young adults, i.e., those defendants 18 years or older. We decline to follow the well-meaning but false interpretation of precedent authored by the majority in Harris to judicially advance greater sentencing discretion to trial judges. This is the province of the legislature. Your Honors, we ask this court to reject the defendant's as-applied challenge to Section 581 and defer defendant's mandatory life sentence under the specific facts of this case. Thank you, counsel. Thank you. Counsel. Thank you. To start out, Bethany isn't raising insufficiency of the evidence claim. This is an unconstitutional as-applied challenge of the proportionate penalties caused to the statutorily mandated life sentence for two offenses, for the two homicides. Counsel argued that she was present for the planning. She was present for the planning of the robbery. It's uncontested in this argument in her briefs that she participated in the robbery. She is culpable for the robbery, certainly, but she did not participate in the homicides and there was no intent that these guys be killed. She had no intent that these guys be murdered. The state also argues that the concealment of the deaths and the proceeds, her use of the proceeds, that she could have withdrawn. But Judge Kinney knew all this and he still would have imposed a discretionary sentence rather than a mandatory life sentence. So that shouldn't sway this court. And also, these occurred after the fact, after the homicides were completed. Once the homicides are completed, the mandatory life sentence kicks in, so it doesn't matter what she did afterwards. She's still facing the mandatory life sentence. And then counsel, as well, we did have some contact yesterday about this Thomas case, which is a newer case at this court. We'll see the motion to add authority on and upon reflection we'll have a motion and a responsive motion. But Thomas spoke about Harris. Harris's citation to Thompson. Thompson, the defendant, filed a section 214.01 petition arguing that his sentence was unconstitutional as applied. But there was no evidentiary hearing to provide that evidence to the court. Thompson said, without this evidence, we can't hear this claim. Thompson also noted that the United States Supreme Court in Alabama, Dean Miller had discussed continued brain development and the arbitrary line that majority applies at 18 years old and stated that if the facts, if the evidence, potentially could be brought out to show the degree of culpability and the person's brain development to show that this person should not receive a sentence as if he was over the age of 18 because his brain wasn't sufficiently developed. And in Harris, that's what Harris was talking about. It said Thompson opened the door to this issue. And what Harris is talking about is that Thompson opened the door to this evidentiary hearing to discuss brain development and how it affects juveniles and how it affects somebody who is 18 or 19 as opposed to 16 or 17 and why there should be this dividing line or there should not be this dividing line. And that's what Thomas is discussing when it discusses Harris. Harris, at that point, is only talking about Miller v. Alabama. It's not talking about the Illinois Supreme Court of Leon Miller, which is a proportionate penalties analysis. And of course, Alabama is under the Eighth Amendment. So at that point, Harris is talking about Alabama v. Miller, Thompson's citation to Alabama v. Miller in his discussion of the brain development. And Harris had already held that Harris's sentence did not violate the Eighth Amendment. So that's precisely what Harris's discussion is about, is about this brain development potential evidentiary hearing. I mean, the issue here is where does the General Assembly's authority stop and our start on these issues? Because, you know, if age, if they can't draw a bright line age because of these issues, I mean, you can make this other than the age thing, but I think the science du jour is that the brain really doesn't fully develop until about age 28 or 29. So if you've got a 25-year-old, you make one. I mean, it just puts into question all of this mandatory sentencing business, you know, mandatory life sentences. You know, it might be better to just give the judge the discretion to do that, but while I might agree with that, then the question is I'm just a judge and the General Assembly has certain powers that are independent of us. We're not to be a legislature. These are tough cases. Absolutely, Your Honor, and they are tough cases. Where do you draw the line? And I think that's what you're... And who gets to draw it? Any legislature has to meet constitutional strictures. So, of course, the legislature, they have the authority to impose this mandatory natural life sentence based on two homicides. They have the authority to do that, but it has to be in line with the proportion of penalties. Well, at least the U.S. Supreme Court has never said 18-year-olds can't be subject to mandatory life sentences, right? Oh, that's absolutely correct. Yes, but our proportion of penalties clause provides greater protections than the Eighth Amendment. It is interpreted a little bit more broadly than the Eighth Amendment specifically, and that's where Harris and House come down on this one side of it stating these are... You have greater protections here in Illinois, so they apply in those cases, in those particular cases based on those facts to the 18- and 19-year-old, and it's an as-applied challenge, so it has to be on a case-by-case basis. I don't think, in answer to your question, I don't think there can be a bright-line rule in these type of cases. And on the brain study, there's a difference between male and female brains development, isn't there? I would assume so. I don't know for sure. We don't have the evidence you're hearing on the brain study. We didn't cite that specifically as evidence to bolster our argument, but here we have an 18-and-a-half-year-old defendant. She's a girl, and you can see the signs of immaturity throughout this case, throughout her mental health history, her personal background, and the offenses as they're committed themselves. They just show this young lady's immaturity. Were the males immature also? I think to some extent they probably are immature, but they were the actual killers in this case. So that has to be considered along with Bethany's non-participation. Bethany's getting the same sentence these other guys are getting. These other guys are the killers. Bethany didn't kill anybody. She didn't intend to kill anybody. She intended to rob them. That was it. These other guys killed her. She's suffering the same disproportionate sentence these guys are getting. Which one of the women testified? That was Elisa Macero. She received 10 years for robbery and concealment. But she testified that they knew that there was going to be killing. No, I'm sorry, Your Honor. She testified that they knew there was going to be a robbery. Her testimony and her statement and Bethany's statement. Okay, I'll go back and look at it. I may have misread it. Yeah, she testified that they knew there was going to be a robbery. They all got together. They planned the robbery. There's no indication that anybody planned a murder. These guys were upstairs when they decided to kill the other two guys. The girls were downstairs at that time. So there's no indication that Bethany, and the trial judge found that she did not participate in the homicides. The trial judge found her guilty based on the common design theory of accountability, that because she was in for the robbery that she suffers the same penalty for the murder. So the trial judge did not find that she intended to kill, or that there was this talk that anybody knew that there was going to be a killing at the time that they were planning this robbery. But, of course, under the law he didn't have to. Bethany did not have to because it's under the common design theory of accountability. And that's why we're not challenging the sufficiency of the evidence here. We're challenging her sentence based on the as-applied constitutional proportionate penalties clause. Because there is support for the design theory of accountability based on her helping to plan that robbery. But under the as-applied challenge, it's her degree of participation that's important for this court. She did not actively participate in the homicides, and there's no indication that she intended that these guys be murdered. There's no indication that there was any discussion of murder before the guys came over. Counsel, your time is up. Thank you. And thank you, Your Honor. Thank you. The court will take this case under advisement and render a decision in the near future. Thank you.